## GRAND LODGE K. P. OF NORTH AMERICA, etc., v. FARMERS' & MERCHANTS' BANK OF BOLEY.

No. 7277—Opinion Filed July 31, 1917.

(166 Pac. 1080.)

(Syllabus by the Court.)

**1. Pleading—Motion to Strike—Irrelevant Matter.**

It is not error for the court, on motion of defendant, to strike irrelevant matter from plaintiff's petition.

**2. Trial—Direction of Verdict.**

Where there is not any competent testimony offered sustaining the allegations of plaintiff's petition, it is not error for the court to direct a verdict for the defendant.

Hardy and Kane, JJ., dissenting.

Error from District Court, Okfuskee County; John Caruthers, Judge.

Action by the Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa, and Australia and the Grand Jurisdiction of Oklahoma against the Farmers' & Merchants' Bank of Boley. There was a judgment for defendant, and plaintiff brings error. Affirmed.

E. T. Barbour, for plaintiff in error.

J. B. Patterson and C. T. Huddleston, for defendant in error.

RAINEY, J. The plaintiff in error, plaintiff below, is a negro fraternal organization incorporated under the laws of the state of Oklahoma, and the defendant in error, defendant below, is a state bank doing a general banking business in the town of Boley, Okla. Parties will be hereinafter designated as in the trial court.

The plaintiff instituted this action in the district court of Okfuskee county, Okla., for the recovery of the sum of $4,007.66, which amount it alleged was due it by said bank as a balance on hand in said bank of the funds deposited therein by one S. M. Dillard, who was alleged to be the Grand Master of Exchequer, or treasurer of the plaintiff's lodge. The material allegations of the petition are that the defendant bank was the depositing bank of the funds of the plaintiff, said funds being deposited in said bank in the name of its Grand Master of Exchequer, S. M. Dillard, and that, upon the 10th day of July, 1913, the plaintiff had on deposit in said bank funds belonging to the plaintiff in the sum of $5,869.02; that since said time the plaintiff, through its authorized officers and through its Grand Master of Exchequer, had drawn checks on said account aggregating $1,861.36, and no more, leaving a balance on hand as above stated.

Upon motion filed by the defendants the court struck from said petition the following allegations:

"That on or about said 10th day of July, 1913, the regular annual session of the said Grand Lodge Knights Pythias of North America, South America, Europe, Asia, Africa, and Australia and the Grand Jurisdiction of Oklahoma was being held at Boley, Okla., and at which session the report of said S. M. Dillard, Grand Master of the Exchequer, was submitted to said session of plaintiff lodge showing a balance in said bank to the credit of said plaintiff lodge of $5,869.02; that said S. M. Dillard, Grand Master of the Exchequer, with said report, submitted to said session of said plaintiff lodge, and to the members thereof assembled, a certified check of the defendant bank herein, which certified check was duly and regularly certified to by D. J. Turner, the cashier of said defendant bank; that the said certified check so drawn and delivered by said bank was for the sum of $5,869.02; that said certified check of said bank, so certified by its cashier as aforesaid, and representing the funds on deposit in said bank belonging to this plaintiff, was upon said 10th day of July, 1913, delivered to said S. M. Dillard, Grand Master of the Exchequer, by defendant bank; that said check of the defendant bank was presented to said session of said plaintiff lodge on said 10th day of July, 1913, and was, on the 11th day of July, 1913, redelivered to said defendant bank by said S. M. Dillard."

The defendant answered, and denied all the material allegations in the plaintiff's petition, and further alleged that one S. M. Dillard had carried a checking account with the defendant bank, and made deposits therein, and checked against said account as "S. M. Dillard, Treasurer"; that the said S. M. Dillard was furnished with a passbook, which was balanced from time to time, and the canceled checks and passbook turned over to him. Defendant attached a verified itemized statement of account, showing a balance on hand to the credit of S. M. Dillard, Treasurer, in the sum of $58.52, which the defendant alleged that it was ready and willing to pay on a properly drawn check or order, and had at all times been willing to pay to the holder of a properly drawn check. Defendant also denied that the funds were in the name of the plaintiff, or that the plaintiff had any interest therein. The answer was verified, and alleged the account was true and correct. The plaintiff did not file a reply to this answer.

At the trial in the district court plaintiff introduced its evidence and rested. whereupon the court, upon motion of the defendant, instructed the jury to return a verdict in favor of the defendant, which was accordingly done. To this action of the court the plaintiff excepted, and after a motion for a new trial was filed and overruled brings the case here.

Plaintiff complains of the action of the trial court in striking the above paragraph in its petition, and in rejecting certain testimony offered by it, which it claims was relevant and competent, and, if permitted to go to the jury under proper instructions, would have entitled the plaintiff to recover. We do not deem it necessary to set out at length all the testimony rejected. It was all directed to prove the allegations in that portion of its petition stricken by the court on motion of the defendant. The scope of this evidence is as follows:

One W. E. Day was called as a witness for the plaintiff, and testified in substance that he was a school-teacher by occupation, and had lived in Muskogee for two years; that on July 10, 1913, he was chairman of the Grand Lodge Knights Pythias, and that it was his duty to check the financial report of the Grand Master of the Exchequer; that he knew S. M. Dillard of Ardmore, Okla.,

who had been Grand Master of the Exchequer, and held such office at the time of the convening of the Grand Lodge of said organization at Boley, Okla., on July 10, 1913; that he had audited and checked up the financial report of the said S. M. Dillard as Grand Master of the Exchequer of said lodge; that said report showed that the said Dillard held for said lodge something over $5,000; that the said Dillard exhibited to him a check for the amount shown by his report, said check being signed by D. J. Turner, cashier of defendant bank. This witness did not attempt to say that the check was certified, but stated that it had the appearance of a genuine certified check; that Turner's name was written across the end of the check in red ink, but that he did not see Turner sign the check.

Witness S. M. Dillard, called by the plaintiff, testified that he was an undertaker by profession and had resided in Ardmore for about twenty years; that on July 10, 1913, he was Grand Master of the Exchequer of plaintiff lodge, and had been for about five years; that as such officer he had in his possession the funds belonging to the lodge, and that as he received the money he would deposit it in the Farmers' & Merchants' Bank of Boley, Okla., and that it was drawn out by checks; that he was in Boley, attending the Grand Lodge in regular annual session; that he made a report to said lodge, and at the same time exhibited to the auditing committee a check for about $5,800; that he returned the check to the Farmers' & Merchants' Bank of Boley, Okla., and that he had never had the check since that time. When asked to describe the check, witness said, "It was a little check about that long (indicating on his hand)," and that it was made out in black ink, and he signed it and Mr. Turner signed it. Witness was then asked to whose order the check was made payable, to which he replied:

"A. I cannot describe just exactly how it was made; it answered the purpose of the committee all right; they never made any kick on it."

When asked if the check was made payable to the Grand Lodge, or to himself as Grand-Master of the Exchequer of said lodge, the witness answered:

"A. It was one of us."

When asked if the check was certified, he said:

"A. It was just as I have said. I do not know whether it was a certified check. It answered the purpose of the committee. It was written out in black ink, and I suppose it was."

Witness further testified that he did not know whether Turner signed the check on the face or on the back. With reference to the manner in which the check was procured, Dillard testified that on the day before the meeting of the Grand Lodge he went to Turner, and requested Turner to help him out, as he (Dillard) was short in the Grand Lodge funds, and did not have the amount of money on hand which the report called for; that Turner answered:

"'Well, Dillard, I will do what I can for you, but that is a pretty poor policy, but I will do anything to help you out'; and he said to me that evening, 'When are your elections going to be?' and I said, 'To-morrow evening'; and he said, 'Come back to-morrow, and we will talk it over.' The next day I called at the bank and talked with him. He kinder acted a little slow, but said, 'I will help you out this time'; and he gave me the check."

The witness also testified that at the time he made said report he did not have anything like $5,000 on deposit in the defendant bank, but that he was unable to say how much he really had on deposit; that some time after the meeting of the Grand Lodge he had a conversation with Turner with reference to the check given him by Turner, in which Turner said:

"Dillard, you know I have not used any of the money, and you know I have helped you out all along. It is mighty bad, that they want me to pay for something I didn't have. You remember, when the Grand Lodge met, you didn't have but about $500, or a little of the rise, and on the first day you gave me $1,095.78, and during your Grand Lodge was here you only put in $450; that don't look like $5,000."

The above testimony, which was rejected by the court, is the strongest testimony offered by the plaintiff. From said testimony it conclusively appears that S. M. Dillard, treasurer of the plaintiff lodge, had embezzled the funds of the organization, and that, in order to secure the approval of his report by the auditing committee of the lodge, Dillard practiced deceit on said committee by fraudulently representing that he had said funds, aggregating $5,800, on deposit in defendant bank, when in truth and in fact said funds had been checked out by him. In practicing said deceit and fraud he had the assistance of one D. J. Turner, the cashier of the defendant bank, who had signed his name to the check, which plaintiff contended was a certified check. We must confess that we are unable to say from the record whether Turner had signed the check as drawer or indorser, or had certified to the same.

If we understand the plaintiff's conten-

tion, it is that all of that part of the petition with reference to the certified check was relevant, and should not have been stricken, and that evidence offered in support thereof should have been received; that, when plaintiff's treasurer accompanied his financial report with the purported check drawn on the defendant bank for $5,869.02, said alleged certified check imported, as a matter of law, that plaintiff, at the time the check was drawn, had the amount of money for which the check was drawn on deposit in the defendant bank; and that in this action on the deposit defendant is estopped to deny that the amount of said deposit was as shown by said check. In support of this position counsel for plaintiff relies upon section 284, Revised Laws of Oklahoma 1910, which reads as follows:

"It shall be unlawful for any officer, clerk or agent of any bank doing business under this chapter to certify any check, draft, or order drawn upon the bank unless the person, firm or corporation drawing such check, draft or order has on deposit with the bank at the time such check, draft or order is certified an amount of money equal to the amount specified in such check. Any check, draft or order so certified by the duly authorized officer shall be a good and valid obligation against any such bank, but the officer, clerk or agent of any bank violating the provisions of this section shall be deemed guilty of a felony, and upon conviction shall be punished as provided herein."

As we understand the law, in an action by a bona fide holder of a certified check against the bank that has certified the check, said bank is estopped to deny the validity of said certified check as a draft upon the funds of the drawer. The certification by the bank is equivalent to a representation that the drawer of the check has sufficient funds in the bank with which to pay the check, and that the bank retains such funds to pay the check promptly when presented. It has been held that no particular form of words are necessary, where it clearly appears that a certification is intended. Under such circumstances it is immaterial whether the bank had sufficient funds of the drawer or not.

In this case, if plaintiff's action had been predicated upon the certified check, and proper proof had been made thereof, it might be entitled to recover. But such is not the case. Plaintiff did not sue upon the check, but instituted his action upon the account or deposit. He never presented the check to the bank, nor demanded payment thereof. The proof shows that the check was voluntarily surrendered to the bank. The petition cannot be construed as a suit upon a certified check, for it was wanting in many of the essential elements of such a suit. Plaintiff did not attach a copy of the check to its petition, nor did it claim to be the legal holder and owner of the check; neither was there an allegation of the presentation of the check, or demand for payment thereof. After the paragraph with reference to the check was stricken, plaintiff did not ask leave to amend its petition, in order to state a cause of action based upon the check; nor do we understand the plaintiff contends that the action was on the check. Under these circumstances, we are of the opinion that the only issue in the case was the amount of plaintiff's deposit or account in the defendant bank, and all reference to the certified check and Dillard's report to the lodge as treasurer was irrelevant, and the objections to the admissibility thereof were properly sustained. We do not think the authorities cited by plaintiff are in point. All of them in effect hold that, in an action on a certified check, the bank is estopped to deny its responsibility. With this testimony out of the case, we do not find any relevant and competent testimony that would entitle the plaintiff to recover. The account was not proven. Plaintiff did not offer in evidence the passbook furnished by the bank to its treasurer, Dillard, nor the original deposit slips kept in the files of the bank, nor any of the books of the bank, although it examined S. M. Dillard as a witness, and although it had D. J. Turner, cashier of defendant bank, served with a subpoena duces tecum, commanding him to bring all the books, papers, and records of the bank relating to the account of the bank with S. M. Dillard, or S. M. Dillard, Treasurer. In addition to this, defendant's itemized verified account, which it alleged in its answer to be true and correct, was not denied under oath by the plaintiff.

We have carefully read the evidence in the case, and to us it conclusively appears that plaintiff lodge only had on deposit in said bank the sum of $58.06, which the bank offered to pay upon a properly drawn check, and, even though the cashier of the bank was guilty of reprehensible conduct in assisting the treasurer of plaintiff lodge to fraudulently procure the approval of his report, that under the law the defendant bank in this action on the account or deposit is not liable.

The judgment of the trial court is affirmed.

All the Justices concur, except HARDY, J., who dissents, and KANE, J., not participating.